IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KARL W. EGGEMEYER,

      Plaintiff,

   v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

      Defendant.

Case No. 6:12-cv-01618-AA
OPINION AND ORDER

Juliana E. Coons
Coons & Coons
440 E. Broadway, Suite 140
Eugene, Oregon 97401
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Sarah L. Martin
Social Security Administration
Office of the General Counsel
701 5th Ave, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Karl Eggemeyer brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On September 30, 2009, plaintiff applied for SSI. Tr. 148-55. His application was denied initially and upon reconsideration. Tr. 104-08, 112-17. On July 26, 2011, an administrative hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 33-98, 118, 123-28. On December 20, 2011, the ALJ issued a decision finding plaintiff disabled for the closed period of August 26, 2008, through January 14, 2010, but thereafter experienced medical improvement. Tr. 11-32. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

## STATEMENT OF FACTS

Born on June 1, 1980, plaintiff was 28 years old on the alleged onset date of disability and 31 years old at the time of the hearing. Tr. 37, 148. Plaintiff graduated from high school, although he was in special education classes and received a modified diploma, and attended approximately two years of college.

Page 2 - OPINION AND ORDER

Tr. 26, 44, 62, 169, 171, 205-06, 248. He was previously employed as a fast food worker, sales person, welder, and laborer. Tr. 25, 89-93, 165, 172. Plaintiff alleges disability as of August 26, 2008, due to a traumatic back injury, which resulted in degenerative disc disease ("DDD") and post laminectomy syndrome; he also alleges disability due to diabetes, obesity, asthma, depression, and borderline intellectual functioning. Tr. 47-48, 148, 164; see also Pl.'s Opening Br. 4.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason

Page 3 - OPINION AND ORDER

of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner evaluates whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner resolves whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform

other work that exists in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 14. At step two, the ALJ determined that plaintiff had the following severe impairments: DDD, post laminectomy syndrome, diabetes, asthma, obesity, borderline intellectual functioning, depression with a mood disorder, and cannabis use. Tr. 14, 16. At step three, the ALJ found that, from August 26, 2008, through January 14, 2010, plaintiff's impairments met listing 1.04(A). Tr. 15. Beginning on January 15, 2010, the ALJ concluded that plaintiff's impairments had improved as the result of a corrective back surgery, such that he was no longer presumptively disabled at step three. Tr. 16-18.

Accordingly, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that, as of January 15, 2010, plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as defined by 20 C.F.R. § 416.967(b):

> [h]e can lift twenty pounds occasionally and ten pounds frequently. He can stand two hours in an eight-hour day and sit six hours in an eight-hour day with normal breaks. He may frequently balance and he may occasionally crouch, crawl, stoop, and kneel. He may never climb scaffolds, ladders or ropes. He may have no

Page 5 - OPINION AND ORDER

> greater [sic] than occasional exposure to irritants such as fumes, dust, gases, odors, and poorly ventilated areas. He may have no exposure to operational control of moving machinery, unprotected heights, or hazardous machinery. He may perform simple routine repetitive tasks, with no greater than a reasoning level of two. He may have occasional interaction with the public. He must have the option to site or stand while remaining on task.

Tr. 19.

At step four, the ALJ found that plaintiff could not perform his past relevant work. Tr. 25. At step five, the ALJ determined that jobs existed in significant numbers in the national and local economy that plaintiff could perform despite his impairments, such as small products assembler and electronics assembler. Tr. 26, 94. As such, the ALJ concluded that plaintiff was not disabled under the Act as of January 15, 2010. Id.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting his testimony; (2) not finding him presumptively disabled at step three after January 14, 2010, under listing 1.04 or 12.05C; and (3) failing to account for all of his limitations in the RFC.

I.  Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting his subjective symptom statements concerning the extent and severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by

Page 6 - OPINION AND ORDER

offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that he was unable to work because of his back pain. Tr. 59. Due to the severity of this pain, plaintiff stated that can stand for 15 to 20 minutes, and sit for 20 to 30 minutes, before needing to change position. Tr. 68. He explained further that he sleeps during the day as a result of nocturnal insomnia. Tr 69. When asked whether his Oxycontin contributed to his day time sleepiness, plaintiff responded "[y]eah, sometimes"; when questioned earlier whether he suffers from any side-effects as a result of this drug, he stated only "[m]emory." Tr. 58, 70.

As for activities of daily living, plaintiff or his girlfriend, who also testified at the hearing, reported that he

Page 7 - OPINION AND ORDER

walks, stretches, reads, watches television or movies, cooks, and vacuums; he also can do laundry and dishes, although his girlfriend usually completes those tasks. Tr. 65, 76, 79-80, 83-85. In addition, plaintiff remarked that he performs stand up comedy and travels from Eugene to Portland at least twice a month to visit his mother. Tr. 42-43, 49-52. Regarding his marijuana usage, plaintiff reported that he has been "a medical marijuana card holder [for a] little over a year" and smokes "[u]sually . . . at night to go to sleep"; he initially denied using marijuana prior to being issued a medical card. Tr. 55. Later during the hearing, the ALJ confronted plaintiff with a medical report reflecting that plaintiff did not have a medical marijuana card but was nonetheless smoking a joint each night. Tr. 72. Plaintiff clarified that he "tried it before . . . to see if it would help anything out." Tr. 72. The ALJ persisted that daily usage was "more than trying it"; plaintiff responded "well - it was painful . . . it's illegal, I'm on probation." Tr. 72-73.

After summarizing plaintiff's hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not fully credible due to his activities of daily living, inconsistent statements, failure to seek and follow prescribed medical treatments, and the lack of corroborating objective medical

evidence.[1]  Tr. 19-24.

Notably, the ALJ determined that plaintiff's credibility was impaired by his activities of daily living.  Inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms, can serve as a basis for discrediting it.  Burch, 400 F.3d at 680.  As the ALJ noted, plaintiff drove four hours round-trip to visit his mother several times a month, traveled to Chicago, and was capable of sitting through a movie.  Tr. 20-23, 42-43, 79-80, 191, 428.  In addition, the record reveals that plaintiff attended college, read, cooked, went for walks and to the park, dined out, could lift 30 pounds, performed stand up comedy, engaged in limited household chores, and slept well throughout the night.  Tr. 20-23, 44, 49-51, 75-76, 79, 187-91, 335; see also Tr. 417 (plaintiff reporting in September 2010 that he left his college culinary program because "he could not stand for 8-10 hours a day [due to] back pain").  These activities belie plaintiff's hearing statements that he could only stand for 15 to 20 minutes, sit for 20 to 30 minutes, and needed to sleep throughout the day; as the ALJ determined, they also evince an ability to perform a limited range of light work.

The ALJ also resolved that plaintiff's inconsistent statements

---

[1] Plaintiff's argument that the ALJ erred in relying on his activities of daily living because they are not transferrable to a work environment is unpersuasive.  Daily activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment."  Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012).  Furthermore, contrary to plaintiff's assertion, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis."  Burch, 400 F.3d at 680-81.

Page 9 - OPINION AND ORDER

rendered him less credible. Tr. 22-23. As denoted above, inconsistent statements can be used to undermine a claimant's credibility. Burch, 400 F.3d at 680; see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (lack of candor about substance use is a clear and convincing reason to reject a claimant's testimony). Substantial evidence supports the ALJ's conclusion in the case at bar. As the ALJ observed, plaintiff's testimony concerning his marijuana usage was contradictory. At the July 2011 hearing, plaintiff expressly stated that he did not use marijuana until obtaining a valid medical card approximately one year ago. Tr. 55. Yet the record demonstrates that plaintiff was using marijuana regularly, without a medical card, as early as January 2009. Tr. 301, 329. The ALJ expressly provided plaintiff with an opportunity to reconcile this inconsistency, but plaintiff's response was vague and equivocal. Tr. 72-73.

Additionally, the ALJ found that plaintiff lacked credibility because he failed to seek treatment for his allegedly debilitating depression or follow his doctors' dietary and exercise recommendations. Tr. 20-22. Failure to seek or follow up on medical treatment is a clear and convincing reason to reject a claimant's subjective statements. Burch, 400 F.3d at 681; see also SSR 96-7p, available at 1996 WL 374186. Here, there is no evidence in the record reflecting any longitudinal mental health treatment and plaintiff does not now proffer a reason, finance-related or otherwise, for his failure to obtain such treatment. See generally Pl.'s Opening Br. As the ALJ observed, the record also

Page 10 - OPINION AND ORDER

memorializes plaintiff's "poor dietary and exercise compliance." Tr. 375-76.

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.

## II. Listings 1.04 and 12.05C

Plaintiff next contends that the ALJ erred at step three in determining that his impairments did not meet or equal listing 1.04 or 12.05C. To establish a listed impairment at step three, the claimant must demonstrate that "all of the specified criteria [are met]." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

### A. Listing 1.04

Listing 1.04(A)[2] applies to disorders of the spine resulting in compromise of a nerve root or the spinal cord, with: "'[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the

---

[2] There are two additional sets of criteria that can satisfy listing 1.04. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(B), (C). Although he does not specifically identify the criterion pursuant to which his challenge is brought, plaintiff only discusses the requirements of listing 1.04(A). See Pl.'s Opening Br. 11-14.

Page 11 - OPINION AND ORDER

spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).'" Swofford v. Comm'r Soc. Sec. Admin., 2013 WL 3333063, *3 (D.Or. July 1, 2013) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)).

As of January 15, 2010, approximately one year after his corrective back surgery, the ALJ determined that plaintiff no longer met listing 1.04(A): "[n]o treating or examining physician has reported clinical findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." Tr. 16. Specifically, the ALJ denoted that, after plaintiff's back surgery, "[h]e noticed improvement in his pain and incontinence," and "[b]y January of 2010 had a negative straight leg-raising test and only had mild tenderness to palpation in one area in his back." Tr. 18. Further, the ALJ observed that May 2010 MRIs revealed medical improvement: "[n]o focal masses or clumping of the nerve roots was seen [and] [p]reviously present severe central canal stenosis was no longer visualized." Id.

Here, substantial evidence supports the ALJ's finding of medical improvement after January 14, 2010. Post-surgery, Todd Kuether, M.D., reported that plaintiff was "certainly up and moving much better and his other symptoms of incontinence have improved although they have not completely resolved." Tr. 319, 321; compare Tr. 257, 302, 411 (medical records reflecting chronic incontinence

Page 12 - OPINION AND ORDER

pre-surgery), with Tr. 56, 59, 378, 411 (evidence indicating that, post-surgery, plaintiff's incontinence was occasional, with accident-free periods). Moreover, Gail Hacker, M.D., recorded during a January 14, 2010, exam that plaintiff had a negative straight-leg raise while seated, with "good strength" and only "sligh[t] [back] tender[ness] to palpation on the superior aspect of the midline surgical scar." Tr. 378. Another physical examination, performed on February 2, 2010, by DeWayde Perry, M.D., revealed no motor or sensory reflex loss, no muscular atrophy, and normal muscle strength. Tr. 328-332. Lastly, plaintiff's most recent MRIs identified "no significant central stenosis" and "no focal masses or clumping of the nerve roots." Tr. 394-95.

Accordingly, the ALJ properly determined that, as of January 15, 2010, plaintiff's back impairment no longer met all of listing 1.04(A)'s requisite elements.[3] Even assuming, however, that

---

[3] In discussing listing 1.04, plaintiff also asserts the ALJ improperly rejected the evaluation of Hassan Ghandour, M.D. See Pl.'s Opening Br. 12-13. In September 2010, plaintiff began treatment with Dr. Ghandour. Tr. 403. On December 24, 2010, Dr. Ghandour noted in plaintiff's chart that, based on May 2010 imaging studies, he "was not a surgical candidate and in fact there was no appointment necessary [with neurosurgery]." Tr. 411. That same day, the doctor wrote a letter in which he opined plaintiff "has sustained irreversible nerve damage" and "is totally disabled." Tr. 403. The ALJ afforded Dr. Ghandour's opinion "[l]ittle weight" because: (1) he had only been treating plaintiff "for four months when he offered this opinion"; (2) "no EMG study [exists in the record] showing nerve damage"; (3) "more recent MRIs show some improvement in [plaintiff's] back following the surgery"; and (4) and "whether or not [plaintiff] is disabled is a decision left up to the discretion of the commissioner." Tr. 25. In so finding, the ALJ accurately represented the contents of the record and assessed other evidence, including medical reports, that conflicted with Dr. Ghandour's evaluation. See Tr. 19-25. Under these circumstances, the Court finds that the ALJ provided a legally sufficient reason, based on

Page 13 - OPINION AND ORDER

evidence relating to plaintiff's back impairment was capable of more than one rationale interpretation, because the ALJ's finding concerning listing 1.04(A) was reasonable, it must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004). The ALJ's decision is affirmed as to this issue.

B. Listing 12.05C

To be disabled under listing 12.05C, the claimant bears the burden of demonstrating: "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013).

Presuming that the first and third elements are met, plaintiff failed to establish presumptive disability under this listing. The record contains one set of IQ test results. In March 2010, Pamela Joffe, Ph.D., performed a psychological evaluation on plaintiff. Tr. 333-40. Verbal and performance IQ were no longer calculated pursuant to the method employed by Dr. Joffe, but plaintiff's full-scale IQ was 74.[4] Tr. 337. The sub-test scores upon which

---

substantial evidence, for discrediting Dr. Ghandour's assessment. See Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989).

[4] Plaintiff contends that "upon subsequent testing, it is possible that [his] IQ scores could fall within the rage required by Listing 12.05." Pl.'s Opening Br. 15-16. Aside from being speculative, plaintiff's argument ignores the fact that, even with a subsequent qualifying IQ score, remand for the payment of benefits would not necessarily be warranted. See, e.g., Strong v. Colvin, 2013 WL 5819102. *3 (D.Or. Oct. 27, 2013) (where the record contained two IQ scores, one qualifying and one not, the

Page 14 - OPINION AND ORDER

plaintiff's full-scale IQ was based were: verbal comprehension – 81, perceptual reasoning – 81, working memory – 80, and processing speed – 71. <u>Id.</u> The doctor noted, however, that "as [plaintiff's] pain medication began to take effect his responses became more slowed and the later half of the intellectual testing may not fully reflect his level of intellectual functioning." Tr. 336. In particular, Dr. Joffe reported that plaintiff's working memory and processing speed sub-tests, the two lowest scores obtained, "likely . . . were affected by mild sedation." Tr. 337.

As such, because neither his full-scale IQ nor sub-tests resulted in scores between 60 and 70, even in conjunction with his chronic narcotic usage, plaintiff cannot demonstrate equivalence under listing 12.05C. <u>Kennedy</u>, 738 F.3d at 1176-78. Therefore, the ALJ appropriately concluded that plaintiff was not presumptively disabled at step three.

III. <u>RFC Assessment and Step Five Finding</u>

Finally, plaintiff argues that the ALJ's RFC is erroneous in two respects. First, plaintiff contends that the ALJ neglected to account for his inability to sustain activity: "[p]laintiff does not disagree that [he] may have the general residual physical ability to do activities equivalent to the sedentary, or even light, exertion level from time to time [but] [o]n the basis of the foregoing arguments . . . it is clear that he would lack the capacity to sustain SGA level work." Pl.'s Opening Br. 18.

---

ALJ did not err in relying on the non-qualifying score to determine that the claimant did not meet listing 12.05C).

Page 15 - OPINION AND ORDER

Second, plaintiff asserts that the ALJ's RFC is inconsistent with the assessment of state-agency consulting source Martin Lahr, M.D., "who opined that Mr. Eggemeyer was limited to an 'overall sedentary' level RFC." Id.

The RFC is the maximum that a claimant can do despite his limitations. See 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider restrictions imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Regarding plaintiff's first allegation of error relating to the RFC, the ALJ properly discredited plaintiff's testimony and found that he did not meet or equal listing 1.04(A) or 12.05C. Thus, to the extent plaintiff's argument is contingent upon a finding of harmful error in regard to the aforementioned issues, it lacks merit. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Further, court's within this District have routinely rejected general arguments regarding sustained activity because "the claimant's ability to maintain employment is subsumed in the RFC determination." Valvo v. Astrue, 2013 WL 1326588, *9 (D.Or. Mar. 30, 2013) (citations and internal quotations omitted); see also Porter v. Astrue, 2009 WL 2595562, *15 (D.Or. Aug. 19,

Page 16 - OPINION AND ORDER

2009) (citing SSR 96-8p, available at 1996 WL 374184).

Concerning his second allegation of error surrounding the RFC, plaintiff quotes Dr. Lahr's report out of context. The doctor explicitly identified plaintiff's functional limitations, in relevant part, as follows: standing and/or walking for a total of at least two hours in an eight-hour workday, and sitting for a total of six hours in an eight-hour workday. Tr. 361. In formulating the RFC, the ALJ did not deviate from Dr. Lahr's assessment and instead articulated restrictions consistent therewith. Compare id. (Dr. Lahr's opinion), with Tr. 19 (RFC limiting plaintiff to standing two hours and sitting six hours in an eight-hour workday). The fact that, after summarizing plaintiff's medical records, Dr. Lahr remarked "MSO given partial wt. overall sed, but postures to occ" does not render the ALJ's RFC erroneous. Tr. 367.

In other words, the distinction between sedentary and light exertion work is immaterial in this case because the ALJ resolved that plaintiff was limited to standing no more than two hours in an eight-hour workday. See Griffith v. Colvin, 2014 WL 1303102, *4-8 (D.Or. Mar 30, 2014) ("light work requires 'a good deal of standing — the primary difference between sedentary and most light jobs'") (quoting SSR 83-10, available at 1983 WL 31251); see also Alsup v. Astrue, 2012 WL 3817795, *7-9 (D.Or. Sept. 4, 2012) (affirming the ALJ's step five finding where the VE explained that the claimant could perform representative occupations identified as light, despite an RFC limiting him to standing and/or walking two hours

Page 17 - OPINION AND ORDER

per day, because those jobs were defined as such due to their production pace and there was no indication that the claimant was limited in that category). Critically, the dispositive hypothetical question posed to the VE included all of plaintiff's well-supported limitations. Compare Tr. 19 (ALJ's RFC), with Tr. 93-96 (dispositive hypothetical question posed to the VE); see also Bayliss, 427 F.3d at 1217-18. Accordingly, the ALJ's RFC and step five finding are upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.
Dated this 15th day of April 2014.

_____
Ann Aiken
United States District Judge